**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 12-23461-CIV-ALTONAGA/O'Sullivan**

**JUAN REINOSO**, *et al.*,

Plaintiffs,

v.

**A G C CONSULTING CIVIL ENGINEERS AND GENERAL CONTRACTORS, INC.**, *et al.*,

Defendants.
_________________________________/

**JOSE QUEZADA**, *et al.*,

Plaintiffs,

v.

**A G C CONSULTING CIVIL ENGINEERS AND GENERAL CONTRACTORS, INC.**, *et al.*,

Defendants.
_________________________________/

**ORDER**

**THIS CAUSE** came before the Court on Defendants, Hunt-Moss, a Joint Venture ("Hunt-Moss") and Keenan, Hopkins, Schmidt and Stowell Contractors, Inc.'s ("KHS&S") (collectively "Moving Defendants[']") Joint Renewed Motion for Summary Judgment . . . ("Motion") [ECF No. 166], filed August 26, 2015. Plaintiffs, Juan Reinoso and others ("Plaintiffs"),[1] filed a Response . . . ("Response") [ECF No. 171] on September 11, 2015;

[1] Plaintiffs include: Rigoberto Vilchez Arauz, Marlon Arroliga, Rolando Baca, Ronaldo Baca, Donald Bacca, Lorenzo Bello, Francisco Bolanos, Leopoldo Campbell, Yony Campbell, Jose Castellanos, Mario Padilla Castro, Jose M. Barcia Diaz, Rigoberto Diaz, Pedro Duarte, Edwin Espinoza, Lazaro Fajardo, Candido Fernandez, Luis J. Garcia, Juan Remberto Lanza, Francisco Javier Garcia Lopez, Jose Luis Lopez, Wilmer J. Luna, Wilmer Masis, Manuel Mendez, Favio Mesa, Edwin Miranda, Reynaldo

Moving Defendants filed a Reply . . . ("Reply") [ECF No. 172] on September 21, 2015. The Court has carefully reviewed the parties' written submissions,[2] the record, and applicable law.

## I. BACKGROUND[3]

### A. Construction of the Marlins Ballpark

Plaintiffs, a group of construction workers, seek to recover wages for work they performed while constructing the Miami Marlins Ballpark ("Ballpark Project") between September 21, 2009 and September 21, 2012. (*See generally* Compl. [ECF No. 1]). Hunt-Moss was the general contractor on the Ballpark Project; KHS&S was a Hunt-Moss sub-contractor, and in turn sub-contracted the stuccowork to Defendant, AGC Consulting Civil Engineers and General Contractors, Inc. ("AGC") (together with Hunt-Moss and KHS&S, "Defendants"). (*See* Mot. 1).

AGC employed Plaintiffs to complete this stuccowork. (*See* Defs.' SMF ¶ 1; Pls.' SMF ¶ 1). AGC supervisors typically directed Plaintiffs' work throughout the day (*see* Defs.' SMF ¶ 8), although a KHS&S representative was usually present onsite as well (*see* Pls.' SMF ¶ 13; August 5, 2013 Deposition of Petrica Sburlescu ("Sburlescu Deposition") [ECF No. 169-4] 28:15–29:1). Plaintiffs contend the KHS&S representative regularly instructed the AGC supervisors and occasionally directly instructed Plaintiffs. (*See* Pls.' SMF ¶¶ 8, 13; *see, e.g.*, April 5, 2013 Deposition of Yassert Siles ("Siles Deposition") [ECF No. 168-23] 40:7–15; 41:13–16).

---

Montoya, Jorge L. Mora, Vital Morales, Cesar Ortega, Eugenio Perdomo, Jose Quezada, Juan Reinoso, Pedro Reyes, Nelson Rivera, Bayardo Rodriguez, Jose Daniel Rodriguez, Marcelo Salazar, Lisardo Sanchez, Yassert Siles, Jose Rivera Teodoro, William Torrez, Porfirio Jose Varela, and Otoniel Velez.

[2] The additional documents include Defendants, Hunt-Moss and KHS&S's Statement of Material Facts . . . ("Defs.' SMF") [ECF No. 167], filed August 26, 2015; and Plaintiffs' Response to Defendants Hunt-Moss and KHS&S's Statement of Undisputed Facts ("Pls.' SMF") [ECF No. 170], filed September 11, 2015.

[3] Pursuant to Local Rule 56.1, undisputed facts set forth by the movant and supported by evidence in the record are deemed admitted.

KHS&S also supplied most of the materials used by Plaintiffs in performing their stuccowork. (*See* Pls.' SMF ¶ 12; Defs.' SMF ¶ 12).

Plaintiffs claim Defendants failed to compensate them at the rate of one-and-a-half times Plaintiffs' regular rates of pay for all overtime hours worked, as required by 29 U.S.C. section 207(a) of the Fair Labor Standards Act ("FLSA claim"). (*See* Compl. ¶ 24). Instead, Plaintiffs either received their regular rates of pay for these overtime hours, or were not paid at all. (*See* Compl. ¶ 24). Plaintiffs further contend Defendants misclassified them as laborers — instead of bricklayers, plasterers, and carpenters — paying them lower salaries as a result ("misclassification claim"). (*See* Pls.' Statement of Claim ("SOC") [ECF No. 12] 2). Due to this misclassification, AGC and KHS&S allegedly failed to pay Plaintiffs minimum wage pursuant to Section 2-11.16 of the Miami-Dade County Code ("County Ordinance"). (*See* Compl. ¶¶ 36–38). Plaintiffs seek recovery from Defendants in the form of minimum wage compensation, overtime compensation, liquidated damages, attorney's fees and costs, and declaratory relief. (*See id.* ¶ 60).

**B. Procedural History**

The procedural history of this case is inextricably tied to its sister case, *Calderon v. Form Works/Baker JV, LLC*, No. 13-CIV-21438-CMA (S.D. Fla. 2013) ("*Calderon I*"), which involved largely similar facts and claims brought by another group of Ballpark Project construction workers against another group of contractors. Due to the similarities between the cases, the Court administratively closed the instant case pending resolution of jurisdictional issues in *Calderon I*. (*See* Order . . . [ECF No. 135]). The Court dismissed the case in *Calderon I*, finding it did not have subject-matter jurisdiction over the plaintiffs' misclassification claim because the County Ordinance does not provide employees with a private right of action. (*See*

*Calderon I*, December 12, 2013 Order [ECF No. 49]). In dismissing *Calderon I* on a factual challenge to jurisdiction, the Court did not consider the plaintiffs' FLSA claim for overtime wages, as the plaintiffs had failed to include this allegation in a Statement of Claim filed after their initial pleading. *See id.* The Court consequently dismissed the instant case for the same reasons. (*See* Order ("Order of Dismissal") [ECF No. 138] 2).

The United States Court of Appeals for the Eleventh Circuit reversed the dismissal order in *Calderon I*, but only to the extent it held the Court had subject-matter jurisdiction over the plaintiffs' FLSA claim for overtime wages despite the plaintiffs' failure to pursue the claim in their later Statement of Claim. *See Calderon v. Baker Concrete Const., Inc.*, 771 F.3d 807, 811 (11th Cir. 2014) ("*Calderon II*"). The Eleventh Circuit specifically declined to comment on the Court's decision regarding the misclassification claim. *See id.* at 811 n.4 ("Because we conclude that the complaint stated a federal claim for unpaid overtime hours, we need not reach and imply no view on whether the plaintiffs' misclassification claim is 'a cause of action arising under federal law.'" (quoting *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 891 (11th Cir. 2013))). Based on its decision in *Calderon II*, the Eleventh Circuit similarly reversed the Order of Dismissal. *See Reinoso v. AGC Consulting Civil Eng'rs & Gen. Contractors, Inc.*, 774 F.3d 1328, 1329 (11th Cir. 2014).

Following the decisions of the Eleventh Circuit, the Court reopened the instant case and Defendants moved to reinstate a motion for summary judgment they had filed before the case was administratively closed. (*See* Defendants' Unopposed Joint Motion to Reinstate Defendants' Motion for Summary Judgment . . . ("Initial MSJ") [ECF No. 153]). On April 2, 2015, the Court denied the Initial MSJ, finding Defendants had not gone "far enough in satisfying the Court there are no triable issues of fact." (Order [ECF No. 154] 2). Moving

Defendants filed a motion for reconsideration on June 16, 2015 (*see* Defendants Hunt-Moss and KHS&S's Joint Motion to Reconsider . . . [ECF No. 157]), which the Court denied (*see* Order [ECF No. 158]). About one week later, Moving Defendants filed another motion for reconsideration (*see* Defendants Hunt-Moss and KHS&S's Joint Motion to Reconsider . . . [ECF No. 159]), which the Court again denied (*see* Order [ECF No. 165]), noting each party's filings were substantively inadequate, as well as rife with improper citations. With Herculean persistence, Moving Defendants come before the Court yet again with the present Motion.

## II. LEGAL STANDARD

Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. July 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations and internal quotation marks omitted)). "[T]he plain language of Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (alteration added) (quoting *Celotex*, 477 U.S. at 322 (alterations and internal quotation marks omitted)).

## III. ANALYSIS

Defendants Hunt-Moss and KHS&S seek summary judgment on two issues: (1) whether Plaintiffs can bring their misclassification claim under the FLSA or otherwise in federal court, given this claim arises under state law; and (2) whether Hunt-Moss and KHS&S constitute joint-employers of Plaintiffs, rendering them liable for Plaintiffs' FLSA claim. (*See* Mot. 2). On the first issue, Moving Defendants argue the Court should dismiss Plaintiffs' misclassification claim because the County Ordinance does not create a private right of action and Plaintiffs cannot incorporate the County Ordinance into their FLSA claim. (*See* Mot. 12–16). Plaintiffs reject this argument, contending a private right of action exists. (*See* Resp. 7–10).

On the second issue, Moving Defendants argue neither Hunt-Moss nor KHS&S satisfies the Eleventh Circuit's eight-factor test for determining joint-employment under the FLSA — particularly they insist neither company sufficiently supervised Plaintiffs' day-to-day work. (*See*

*id.* 4–12). In response, Plaintiffs assert KHS&S exercised substantial control over Plaintiffs' work (*see* Pls.' SMF ¶¶ 8, 9, 10, 12, 13, 14, 16, 17), and Hunt-Moss is liable under the County Ordinance's provision for joint and several liability of the prime contractor (*see* Resp. 2).

**A. Misclassification Claim**

Moving Defendants argue Plaintiffs cannot bring their misclassification claim in federal court because it is arises under a County Ordinance. (*See* Mot. 2). Plaintiffs contend they have a private right of action to bring their County Ordinance claim in federal court by incorporating the minimum wage and overtime provisions from the County Ordinance into their FLSA claims. (*See* Resp. 7–10). In *Calderon I*, the Court determined the County Ordinance does not provide employees a private right of action. (*Calderon I*, December 12, 2013 Order 7 ("[W]hen an administrative process or scheme is provided by statute or ordinance, a court should be particularly hesitant to provide a private right of action when none is expressly granted[;] . . . the Ordinance and Supplemental General Conditions do allow underpaid employees to file a complaint with the Director of the Department of Small Business Development in an effort to collect unpaid wages" (alterations added)); Order of Dismissal 1–2 ("Particularly, the Court's order in *Calderon* concludes Miami-Dade County Code, section 2-11.16 — the same ordinance at issue in this case — does not provide aggrieved employees with a private right of action and cannot provide the basis for a valid FLSA claim.")).

Because the Eleventh Circuit reversed the *Calderon I* decision on other grounds, the Court's conclusion regarding the private right of action issue remains intact. *See Calderon II*, 771 F.3d at 811. Plaintiffs fail to cite any recent authority that would alter the Court's prior conclusion. (*See generally* Resp.). As Plaintiffs' misclassification claim is based solely on the

County Ordinance (*see* Compl. ¶¶ 35–43) and cannot be incorporated into the FLSA claim, Defendants' Motion is granted with respect to this claim.

**B. FLSA Claim: Hunt-Moss as a Joint-Employer**

Plaintiffs again rely on the County Ordinance to establish Hunt-Moss's liability as a joint-employer for the FLSA claim. (*See* Resp. 2). Plaintiffs argue Hunt-Moss is jointly and severally liable under the County Ordinance as the prime contractor, and request the Court exercise supplemental jurisdiction over the FLSA claim against Hunt-Moss. (*See id.*). As discussed, the County Ordinance does not provide Plaintiffs with a private right of action; thus, Hunt-Moss cannot be held liable as a joint-employer on this basis alone. *See Calderon I*, December 12, 2013 Order 7. Furthermore, because Plaintiffs do not have a clear private right of action, the Court denies Plaintiffs' request to exercise supplemental jurisdiction over this claim. *See Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1364 (S.D. Fla. 2000) (declining to exercise supplemental jurisdiction when the state statute did not clearly provide a private right of action); *Hamilton v. Bd. of Sch. Comm'rs of Mobile Cnty., Ala.*, 993 F. Supp. 884, 891 (S.D. Ala. 1996) ("A federal district court may decline to exercise supplemental jurisdiction over any state law claim that 'raises a novel or complex issue of State law.' . . . Without doubt, whether a plaintiff may assert a private cause of action under a state statute which creates no express right of action is a novel question of state law." ((alteration added) quoting 28 U.S.C. section 1367(c))).

As Plaintiffs set forth no basis other than the County Ordinance for holding Hunt-Moss liable as a joint-employer under the FLSA, the Motion is granted with respect to Hunt-Moss.

**C. FLSA Claim: KHS&S as a Joint Employer**

While Plaintiffs clearly fail to demonstrate Hunt-Moss operated as a joint-employer, they present a closer case for KHS&S. Plaintiffs and Moving Defendants agree the FLSA joint-

employment analysis governs the question of whether KHS&S employed Plaintiffs with AGC. (*See* Mot. 5–12; *see also* Resp. 3–7). Under the FLSA's joint-employment analysis, the Court must consider the "economic reality" of the relationship between the alleged employer and the workers, specifically whether the workers were economically dependent on the alleged employer. *See Tafalla v. All Fla. Dialysis Servs., Inc.*, No. 07-80396-CIV, 2009 WL 151159, at *5 (S.D. Fla. Jan. 21, 2009) (citing *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961); *Aimable v. Long and Scott Farms*, 20 F.3d 434, 439 (11th Cir. 1994); *Lane v. Capital Acquisitions and Mgmt. Co.*, No. 04-60602, 2007 WL 676019, at *4 (S.D. Fla. Feb. 28, 2007)).

The Eleventh Circuit has identified eight factors for courts to consider in determining whether workers are economically dependent upon, and thus employed by the alleged employer: (1) the nature and degree of control of the alleged joint employer over the employee; (2) the degree of supervision over work, either direct or indirect; (3) the right to hire, fire or modify the employment conditions; (4) the power to determine the workers' pay or method of payment; (5) the preparation of payroll and payment of wages; (6) the ownership of facilities where the work occurs; (7) the performance of a job integral to the business; and (8) the relative investment in the equipment and facilities. *See Antenor v. D & S Farms*, 88 F.3d 925, 932 (11th Cir. 1996). The inquiry in joint employment cases is "not whether the worker is more economically dependent on the independent contractor or the [alleged employer], with the winner avoiding responsibility as an employer;" instead, the Court should focus on each employment relationship as it exists between the worker and the party asserted to be a joint employer. *Id.* at 932 (alteration added). No one factor is dispositive, as the existence of a joint employment relationship depends on the economic reality of all the circumstances (*see id.* (citing *Aimable*, 20 F.3d at 439)); and the FLSA should be construed broadly to best effectuate its remedial and

humanitarian purpose (*see id.* at 933 (citing *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945))).

Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes Plaintiffs have demonstrated genuine disputes of material fact regarding KHS&S's status as a joint-employer under the FLSA. Plaintiffs submit facts that call into question at least four of the eight factors in the Eleventh Circuit's joint employment test. The Court briefly considers each of these four factors in turn.

1. Nature and Degree of Control

"[C]ontrol arises when [the alleged employer] determines, for example, the number of workers hired for a job, when work should begin on a particular day, which workers should be assigned to specific tasks, and whether a worker should be disciplined or retained." *Id.* at 933 (citing *Aimable*, 20 F.3d at 441) (alterations added). Anthony Acosta, AGC's president, testified KHS&S played a substantial role in determining the number of workers hired by AGC to carry out its stuccowork. (*See* Pls.' SMF ¶ 8; June 17, 2013 Deposition of Antonio Acosta ("Acosta Deposition") [ECF No. 168-1] 24:3–14 ("[S]ometimes we had 20 or 30 people, and then KHS&S would ask for more, 40 or 50, because they would need . . . to rush . . . KHS&S complained about us not having sometimes enough people in the field, and that was most of the time solved in a couple of days and then we would bring the people back . . . ." (alterations added))).

Furthermore, while Moving Defendants claim "AGC set Plaintiffs' hours of work, including overtime hours" (Defs.' SMF ¶ 8), Plaintiff Yassert Siles stated Edwin — a KHS&S employee — would determine the hours and even days Plaintiffs worked toward the end of the Ballpark Project. (*See* Pls.' SMF ¶ 13; Siles Dep. 44:4–10 ("Edwin would come and tell us we were going to stay through 5:00. And sometimes he would come on Fridays and say we're going

to work Saturday or Sunday.")). Thus, Plaintiffs demonstrate disputed facts regarding the nature and degree of control of KHS&S over Plaintiffs.

2. Degree of Supervision

"Supervision can be present regardless of whether orders are communicated directly to the alleged employee or indirectly through the contractor." *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1178–79 (11th Cir. 2012) (citing *Aimable*, 20 F.3d at 441). However, "infrequent assertions of minimal oversight do not constitute the requisite degree of supervision." *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1211 (11th Cir. 2003) (citation omitted). Plaintiffs' submissions indicate KHS&S employees' interactions with Plaintiffs rose above the level of "infrequent assertions of minimal oversight." *Id.* Two of the AGC supervisors, Petrica Sburlescu and Cristian Parfene, stated a KHS&S representative directed them on a daily basis. (*See* Sburlescu Dep. 28:15–29:1 ("[T]here was a representative from their company that would be with me and our team all day long . . . telling us which was the next wall that we were supposed to be working on and he would also be the one providing the materials." (alterations added)); July 31, 2013 Deposition of Cristian Parfene ("Parfene Deposition") [ECF No. 169-2] 16:16–17:8 ("I was getting more instructions on a daily basis from KHS&S . . . [Edwin] would bring us the sheet with papers and say you guys are going to do this area, here's the screws, here's the whatever you need, the tape, this and that and the other . . . ." (alterations added))).

While Moving Defendants contend KHS&S representatives rarely, if ever, directly supervised Plaintiffs or provided substantive guidance aside from scheduling and quality control (*see* Reply 3–4; Defs.' SMF ¶¶ 13–14), several Plaintiffs recount instances or periods of time when KHS&S representatives directly instructed them. For example, Yony Campbell described how during approximately four months of the Ballpark Project, he worked directly for Kevin, a

KHS&S representative: "Kevin was there all day. So, he was super — actually, Kevin told me what to do." (March 28, 2013 Deposition of Yony Campbell ("Campbell Deposition") [ECF No. 168-5] 30:4–8; 21:16–23). Further, when AGC stopped paying Campbell for a period of time and he ceased going to work, Kevin called him to explain what happened. (*See id.* 23:25–24:15).

Additionally, Yassert Siles described how, for a few weeks, he worked with Edwin, a KHS&S employee, "[a]most the whole day" (Siles Dep. 41:3–13 (alteration added)). Edwin would directly instruct Siles by sending him to get screws or "work[ing] with him doing layout" (*id.* 40:7–15; 41:13–16 (alteration added)); and Siles would approach Edwin with work-related problems (*see id.* 42:3–43:19). Finally, Candido Fernandez testified Edwin would "sometimes tell us to do this area, or make more mixture, or do something" (March 29, 2013 Deposition of Candido Fernandez ("Fernandez Deposition") [ECF No. 168-9] 31:16–20); "[h]e was all the day there for the lath and stucco people" (*id.* 32:5–8 (alteration added)); and sometimes Edwin even asked the workers not to do a job AGC had instructed them to do (*id.* 36:15–25). The Court disagrees with Moving Defendants that Siles and Fernandez's testimony merely establishes KHS&S provided general instructions or checked quality (*see* Reply 3–4), as the aforementioned testimony demonstrates periods of time in which KHS&S directly and substantively interacted with Plaintiffs, sometimes for as long as several months. (*See, e.g.*, Campbell Dep. 30:4–8; 21:16–23). Tellingly, Moving Defendants entirely fail to address Campbell's testimony.

Particularly relevant to the FLSA claim at issue, two of the Plaintiffs also testified KHS&S employees played a role in recording the time they worked, at least for part of Plaintiffs' employment. (*See* Siles Dep. 40:16–44:10 (stating Edwin recorded his hours for several weeks at the end of the project, and Siles complained directly to Edwin about his paychecks); *see also* Campbell Dep. 20:20–21:23 (stating Kevin recorded his hours during the end of the project)).

Overall, Plaintiffs identify disputed facts regarding the degree to which KHS&S supervised their work.

3. Performance of a Job Integral to the Business

Another factor in determining joint employment is whether the workers performed a job integral to the alleged employer's business. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729–730 (1947) (holding beef boners were employees of a slaughtering plant under the FLSA because they worked "as a part of the integrated unit of production" and "did a specialty job on the production line"); s*ee also Antenor*, 88 F.3d at 937 ("This factor is probative of joint employment because a worker who performs a routine task that is a normal and integral phase of the grower's production is likely to be dependent on the grower's overall production process.").

The testimony of Raul Paraschiv, one of the AGC supervisors, demonstrates Plaintiffs' stuccowork was a piecemeal part of the integrated construction production line — much like the beef-boning and bean-picking discussed in *Rutherford* and *Antenor*. *See id*; *see also* (July 26, 2013 Deposition of Raul Paraschiv ("Paraschiv Deposition") [ECF No. 169-1] 15:9–16:1 ("And, after that, the electricians would come. And then, the plumber did come, and he put up the plumbing. And all the other stuff; fire prevention . . . And after all these operations were done, they needed do [sic] the hang-up, where they would put up the sheetrock, so we could come in and do the stucco." (alteration added))). Moving Defendants' insistence this argument could apply to any contractor-subcontractor relationship (*see* Reply 6) falls flat, as some subcontractors perform work more tangentially related to the contractor. *See, e.g.*, *Layton*, 686 F.3d at 1180 (finding drivers delivering packages for a carrier did not perform a specialty job integral to the carrier's business as they performed most of their work away from the carrier's facilities and supervision, did not work side-by-side with the carrier's employees, and operated vehicles not

owned by the carrier). By contrast, in the instant case, Plaintiffs worked under KHS&S's supervision alongside some of its employees, and utilized KHS&S equipment. (*See* Pls.' SMF ¶¶ 12–13).

4. Relative Investment in the Equipment and Facilities

Finally, in determining joint employment, courts must consider "the relative degree of investment in equipment and facilities by the independent contractor on the one hand, and the putative employer on the other . . . because of the workers' economic dependence on the person who supplies the equipment or facilities." *Antenor*, 88 F.3d at 937 ((alteration added) citing *Rutherford*, 331 U.S. at 730). Moving Defendants concede this factor "may remotely weigh in Plaintiffs' favor" as "KHS&S did supply some materials, like scaffolding, to the Plaintiffs." (Mot. 11). Indeed, Plaintiffs' submissions indicate KHS&S owned all the scaffolds and related equipment used by Plaintiffs including boom lifts, scissor lifts, harness anchors, harness hooks, peri scaffolds, fiber tape, stucco, plastic to cover the floor, expansion joints, corner bead, wire lath, paper for the walls, and screws. (*See* Pls.' SMF ¶ 12; Campbell Dep. 36:1–37:9; April 1, 2013 Deposition of Lazaro Fajardo ("Fajardo Deposition") [ECF No. 168-8] 29:18–31:4). KHS&S also provided Plaintiffs with shirts displaying the KHS&S logo for them to wear on a daily basis while on the Project. (*See* Pls.' SMF ¶ 12; April 4, 2013 Deposition of William Torrez ("Torrez Deposition") [ECF No. 168-24] 23:16–18; Campbell Dep. 32:18–21). Plaintiffs, in contrast, merely provided their own hand tools. (*See* Pls.' SMF ¶ 12).

5. Totality of the Circumstances

Considering the "totality of the economic circumstances," *Layton*, 686 F.3d at 1181, and viewing the evidence in the light most favorable to Plaintiffs, the Court concludes Plaintiffs have

demonstrated genuine disputes of material fact regarding KHS&S's status as a joint-employer under the FLSA. The Motion is denied in this respect.

## IV. CONCLUSION

The Court finds summary judgment is not proper on the issue of KHS&S's liability as a joint-employer for Plaintiffs' FLSA claim. As explained, summary judgment is proper on the issue of Hunt-Moss's liability as a joint-employer for the FLSA claim, as well as on Plaintiffs' misclassification claim. Accordingly, it is

**ORDERED AND ADJUDGED** that the Motion for Summary Judgment **[ECF No. 166]** is **GRANTED in part** and **DENIED in part** as stated herein.

**DONE AND ORDERED** in Miami, Florida, this 7th day of October, 2015.

Cecilia M. Altonaga
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record